USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                 :

UNITED STATES OF AMERICA                :

                                                 :            08-CR-1280 (VEC)

                       -against-                :            16-CV-2055 (VEC)

ROBERT SIMMONS,                        :            MEMORANDUM
                                                 :            OPINION & ORDER
                                       Defendant.   :
                                                   :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant Robert Simmons, awaiting resentencing after this Court vacated his original sentence on August 29, 2016, *see* Docket Number 08 Cr. 1280 (VEC),[1] Dkt. 63, moved to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).  Notice of Mot., Dkt. 93.  Defendant's motion is DENIED.  Even assuming *arguendo* that Defendant's motion is a proper way to challenge his conviction, is timely under Rule 12(b)(3) or its untimeliness excused for good cause under Rule 12(c)(3), and that the indictment on which he was convicted was defective for failing to adequately charge knowledge of his status, Defendant's motion fails because he cannot demonstrate that his conviction on the allegedly defective indictment was plain error or otherwise caused him any prejudice.

## BACKGROUND

On November 10, 2008, after receiving a 911 call reporting that an individual had brandished a firearm, New York City police officers conducted a sweep of Defendant Robert Simmons' apartment and recovered a firearm with a loaded magazine.  *See* Mar. 2, 2010 PSR ¶¶

---

[1] Unless otherwise noted, all citations to the docket are to Docket Number 08 Cr. 1280 (VEC).

7–16.  On December 17, 2008, Defendant was charged in a one-count indictment with violating 18 U.S.C. §§ 922(g), 924(e).  *See* Indictment, Dkt. 1.  In relevant part, the indictment charged:

> From on or about November 5, 2008, up to and including on or about November 10, 2008, in the Southern District of New York, ROBERT SIMMONS, the defendant, unlawfully, willfully, and knowingly, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about March 17, 1992, in New York State Supreme Court, New York County, for Attempted Robbery in the First Degree, a Class C felony, in violation of New York Penal Law 160.15; a Class D felony, in violation of New York Penal Law 160.10; a conviction on or about June 7, 1988, in New York State Supreme Court, New York County, for Robbery in the Third Degree, a Class D felony, in violation of New York Penal Law 160.05; did possess in and affecting commerce, a loaded firearm, to wit, a Taurus 9mm Luger semi-automatic pistol, and ammunition, to wit, ten rounds of 9mm Luger ammunition, all of which had previously been shipped and transported in interstate and foreign commerce.

On December 11, 2009, Hon. (ret.) Shira A. Scheindlin presided over a bench trial on stipulated facts and found Defendant guilty of violating 18 U.S.C. §§ 922(g), 924(e).  At trial, Defendant stipulated that, at the time he possessed the firearm, he "had previously been convicted of three felonies, that is, crimes punishable by a term of imprisonment of more than one year," and further stipulated to having been sentenced to 6 to 12 years' imprisonment for a March 1992 conviction, 3 to 6 years' imprisonment for a June 1988 conviction, and 3 to 6 years' imprisonment for another June 1988 conviction.  *See* Stip., Dkt. 95-1.  On April 14, 2010, Judge Scheindlin sentenced Defendant to a mandatory minimum term of imprisonment of 180 months.  *See* Dkt. 38.

Since that time, Defendant's case has not been lacking procedural twists and turns.  On March 21, 2016, after the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), Defendant filed a petition under 28 U.S.C. § 2255 challenging his 18 U.S.C. § 924(e) sentencing enhancement on the grounds that he was not an "Armed Career Criminal" under the statute.  *See* Mot., Docket Number 16 Cv. 2055 (VEC), Dkt. 1.  With the consent of the Government, *see*

Dkt. 60, on August 29, 2016, this Court vacated Defendant's sentence of 180 months in light of the Supreme Court's decision in *Johnson* and the Second Circuit's decision in *United States v. Jones*, 830 F.3d 142 (2d Cir. 2016), *vacated,* 838 F.3d 296 (mem.).  Dkt. 63.  Also without objection from the Government, Defendant was released from custody pending resentencing. *See id.*

Between late 2016 and early 2019, this Court stayed and held in abeyance Defendant's resentencing pending the development of Second Circuit case law regarding the interplay between the Armed Career Criminal Act, 18 U.S.C. § 924(e), and robbery convictions under New York law.  *See* Docket Number 16 Cv. 2055 (VEC), Dkt. 19; Dkt. 21; Dkt. 24; Dkt. 26; Dkt. 28; Dkt. 32.  In *United States v. Pereira-Gomez*, the Second Circuit held that a conviction for "[r]obbery and attempted robbery in any degree under New York law" is a conviction for a "crime of violence" under the "force clause" of the Sentencing Guidelines.  903 F.3d 155, 166 (2d Cir. 2018).  Thus, a defendant previously convicted of such crimes is subject to enhanced penalties under the Armed Career Criminal Act.  *See id.*  After the Supreme Court denied certiorari in *Pereira-Gomez*, which finally confirmed that Defendant's prior robbery convictions subjected him to enhanced penalties under 18 U.S.C. § 924(e), on April 23, 2019, this Court lifted the stay and ordered Defendant to appear for resentencing.  *See* Dkt. 85.

Before Defendant appeared for resentencing, however, on June 21, 2019, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  *Rehaif* held that, in a prosecution pursuant to 18 U.S.C. § 922(g), the Government must prove not only that the defendant knew he possessed a firearm but also that he knew he belonged to the relevant category of individuals prohibited from possessing a firearm.  *Id.* at 2194.  Upon Defendant's request, the Court adjourned resentencing and granted the parties the opportunity to brief the applicability of *Rehaif* to Defendant.  *See* Dkt. 91.  On September 3, 2019, Defendant moved, pursuant to Rule

12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, to dismiss the indictment.  *See* Notice of Mot.  Defendant has remained at liberty pending resentencing since August 2016.

## DISCUSSION

### I.     Procedural Issues

As an initial matter, the Court notes that Defendant must overcome numerous procedural hurdles for the Court to consider his motion on the merits.[2]  The unique posture of Defendant's case — post-trial, post-conviction, pre-resentencing, and over ten years removed from the initial date of conviction — renders the procedural issues particularly complex.  The Court writes briefly to address these issues primarily to guide its merits analysis, but the Court also questions whether Defendant would be able to survive this procedural gauntlet.  Because, however, Defendant's motion fails regardless of how the procedural issues play out, the Court need not decide them in order to deny Defendant's motion.

A motion alleging a defective indictment must be raised "by pretrial motion if the basis for the motion is then reasonably available."  Fed. R. Crim. P. 12(b)(3).  Although Defendant did not move pretrial, he asserts that his motion is nevertheless timely under Rule 12(b)(3) because the basis for the motion was not "reasonably available" pretrial.  *See* Def.'s Mem. of Law at 17–19.  Alternatively, Defendant argues the Court should consider his untimely motion because he

---

[2] The first hurdle is whether Defendant's Rule 12(b)(3) motion is a proper vehicle for challenging his conviction.  At least for purposes of this motion, the Court agrees with Defendant that his motion be construed as presented, a motion to dismiss the indictment as defective pursuant to Rule 12(b)(3), rather than adopting the Government's preferred position, which would have the Court view the motion as a Section 2255 petition masquerading as a Rule 12(b)(3) motion.  While perhaps a challenge pursuant to another rule or provision, such as a writ of *coram nobis*, *see United States v. Faircloth*, No. 06-CR-117-FtM-29MRM, 2020 WL 2520675, at *3 (M.D. Fl. May 18, 2020), would have been more appropriate given the unique circumstances in this case, the Government has essentially conceded that the remedy Simmons seeks could not have been pursued via Section 2255 because his prior sentence had been vacated.  *See* Oral Arg. Tr. at 13–14, Dkt. 98; *see also United States v. Gonzalez*, 291 F. App'x 392, 394 (2d Cir. 2008) ("Because [petitioner] made the motion while awaiting resentencing, and hence not while 'under sentence of a court,' the motion was not made under Section 2255."); *Stantini v. United States*, 140 F.3d 424, 426 (2d Cir. 1998) (finding a defendant cannot bring a motion under Section 2255 to the extent defendant is not "in custody under a sentence").

has shown "good cause" under Rule 12(c)(3). *See id.* at 18 n.3. Whether the *Rehaif* issue was "reasonably available" pretrial under Rule 12(b)(3) and whether the change in law caused by *Rehaif* constitutes "good cause" under Rule 12(c)(3) appear to be issues of first impression in this Circuit.[3] At least one other circuit has determined that *Rehaif* — "[a]n intervening legal decision that overturn[ed] settled law" — constitutes "good cause" for purposes of Rule 12(c)(3). *See United States v. Maez*, 960 F.3d 949, 956–57 (7th Cir. 2020) (noting that "*Rehaif* went counter to the settled views of every federal court of appeals on an issue affecting thousands of felon-in-possession prosecutions every year"). In contrast, at least two district courts within this Circuit, in reasonably similar circumstances but different procedural postures, have determined that the Supreme Court's decision in *Rehaif* did not constitute "good cause" for an untimely motion because "[t]he issue decided in *Rehaif* was percolating in the courts for years" and was "reasonably available" as a basis for objection at the time of trial. *United States v. Bryant*, No. 11-CR-765, No. 16-CV-3423, 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020) (considering the issue of good cause in the context of a habeas motion); *see also Waring v. United States*, No. 17-CR-50, No. 19-CV-7982, 2020 WL 898176, at *2 (S.D.N.Y. Feb. 25, 2020) (citing *Bryant* for the proposition that the issue had been "percolating in the courts for years").[4] Outside the Second Circuit, it appears that the significant majority of courts to consider the broader issue of

---

[3]  Second Circuit case law is also seemingly devoid of any discussion of these issues outside the *Rehaif* context.

[4]  In *Jones v. United States*, the court assumed without deciding that the *Rehaif* issue allowed petitioner to show good cause for his procedural default in the context of a Section 2255 petition. No. 19-CIV-9376, No. 17-CR-770, 2020 WL 4887025, at *2 (S.D.N.Y. Aug. 19, 2020). The court acknowledged *Bryant*'s finding but chose not to follow that precedent because the petitioner was proceeding *pro se* in the case before it. *See id.* at *2 n.1. Similarly, in *Harrison v. United States* the court assumed without deciding that cause existed but expressed doubt that cause really did exist because "before the Supreme Court decided *Rehaif*, 'the Federal Reporters were replete with cases' deciding its central issue." No. 07-CR-757, 20-CV-1428, 2020 WL 4481937, at *4 (E.D.N.Y. Aug. 4, 2020) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). The court in *Whitley v. United States* took the same approach, declining to decide the issue of cause, although deeming it a "close one." No. 16-CIV-3548, No. 04-CR-1382, 2020 WL 1940897, at *6 (S.D.N.Y. Apr. 22, 2020).

procedural default or waiver in the wake of *Rehaif* have similarly found that *Rehaif*'s decision on the knowledge-of-status requirement does not constitute good cause to justify an otherwise waived or defaulted motion.[5]

Were the Court to determine that the knowledge-of-status issue was "reasonably available" to Defendant at the time of his trial, Defendant's motion to dismiss the indictment would be "untimely." *See* Fed. R. Crim. P. 12(b)(3), (c)(3). Were the Court to further determine that the change in law articulated in *Rehaif* did not constitute "good cause" under Rule 12(c)(3), the Court likely could not even consider Defendant's motion, as Rule 12(c)(3) articulates "good cause" as the only basis upon which a court may consider an untimely motion. *See id.* Second Circuit case law seems fairly clear that under Rule 12, as amended in 2014,[6] a party's failure to

---

[5] A number of courts in the Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have deemed the knowledge-of-status issue to have been reasonably available prior to *Rehaif*, precluding defendants from showing good cause to overcome procedural default in the context of Section 2255 or similar motions. *See, e.g.*, *United States v. Catlett*, No. 10-CR-324-1, 2020 WL 5982266, at *2 (E.D. Pa. Oct. 8, 2020) (Third Circuit); *Beck v. United States*, No. 20-CV-67, 2020 WL 5942578, at *14 (E.D. Mo. Oct. 7, 2020) (Eighth Circuit); *Gayle v. United States*, No. 19-CV-62904, 2020 WL 4339359, at *4 (S.D. Fla. July 28, 2020) (Eleventh Circuit); *United States v. Vasquez-Ahumada*, No. 18-CR-5, 2020 WL 3213397, at *2 (W.D. Va. June 15, 2020) (Fourth Circuit); *United States v. Hisey*, No. 18-40063-01-DDC, 2020 WL 2915036, at *3–4 (D. Kan. June 3, 2020) (Tenth Circuit); *Mujahidh v. United States*, No. C19-1852JLR, 2020 WL 1330750, at *2–3 (W.D. Wash. Mar. 23, 2020) (Ninth Circuit); *United States v. Scott*, No. 17-CR-23, 2020 WL 1030927, at *13 (E.D. La. Mar. 3, 2020) (Fifth Circuit); *Gray v. United States*, No. 19-C-607, 2020 WL 127646, at *3 (M.D. Tenn. Jan. 10, 2020) (Sixth Circuit). At least one district court in the First Circuit, while not expressly holding as much, expressed serious doubt that *Rehaif* could support a finding of good cause to avoid procedural default. *See United States v. McForbes*, No. 15-CR-40014, 2020 WL 4736188, at *1 (D. Mass. Aug. 14, 2020).

Meanwhile, a handful of courts in the First, Ninth, and Tenth Circuits have determined that *Rehaif*, by overturning longstanding and widespread precedent, established a new rule so that cause existed to excuse the procedural default. *See, e.g.*, *United States v. Newman*, No. 18-CR-41, 2020 WL 5517652, at *3 (D. Nev. Sept. 14, 2020); *United States v. Dace*, No. 16-CR-383, 2020 WL 4805761, at *2 (D. Colo. Aug. 18, 2020); *Cayford v. United States*, No. 16-CR-105, 2020 WL 4475891, at *4 (D. Me. Aug. 4, 2020). The majority of cases in which a court has determined there to have been cause seem, however, to have been decided by the same two judges in the District of Nevada.

[6] "Prior to 2014, Rule 12(e) provided that if the defendant failed to file a 12(b)(3) motion within the time set by the court (including any extension), the claim was 'waived.'" Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 194 (3d ed. 2020). While some courts deemed the waiver language to foreclose review of any untimely motion under Rule 12(b)(3), other courts chose to treat the untimely motion as having been "forfeited," thereby triggering review for plain error under Federal Rule of Criminal Procedure 52(b). *See id.* Under the pre-2014 version of Rule 12, the Second Circuit held that absent a showing of good cause, a defendant completely waived a 12(b)(3) argument by failing to raise the argument before trial. *See United States v. Gonzalez*, 764 F.3d 159, 170 (2d Cir. 2014); *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003).

raise a 12(b)(3) issue before trial constitutes a complete waiver of that issue absent a showing of good cause, such that a court cannot exercise discretion to review an untimely 12(b)(3) motion.[7] *See United States v. Martinez*, 862 F.3d 223, 234 (2d Cir. 2017) (finding that an untimely argument is excused only where "there is a showing of cause" (internal quotation marks omitted)), *judgment vacated on other grounds by Rodriguez v. United States*, 139 S. Ct. 2772 (2019) (mem.); *see also United States v. Mustafa*, 753 F. App'x 22, 44 (2d Cir. 2018) (summary order) ("A district court is not required to entertain an untimely motion and its discretion to do so depends upon the movant showing good cause."); *United States v. Mulholland*, 702 F. App'x 7, 10 (2d Cir. 2017) (summary order) (deeming waived as untimely a 12(b)(3) motion not made before trial and absent a showing of good cause); *United States v. Hester*, 674 F. App'x 31, 36 (2d Cir. 2016) (summary order) ("Because Hester fails to provide this Court with good cause why he failed to raise these grounds before trial, there has been a complete waiver of his claim.").

If the Court had discretion to review Defendant's motion even if untimely and even if good cause has not been shown, the Court's review could only be for plain error.  *See* Fed. R. Crim. P. 52(b); *see also United States v. Vasquez*, 899 F.3d 363, 372–73 (5th Cir. 2018); *United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017); *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015).  As discussed below, under Second Circuit precedent, Defendant cannot demonstrate plain error, and thus, even assuming Defendant could successfully wade through the procedural thicket, Defendant's motion must be denied.

---

[7]     Other Circuits appear to be split on whether, after 2014, a court may review an untimely Rule 12(b)(3) motion absent good cause.  *See United States v. Bowline*, 917 F.3d 1227, 1237 (10th Cir. 2019) (supporting its decision not to review an untimely Rule 12 argument absent good cause by pointing to decisions from the First, Second, Third, Eighth, and Ninth Circuits but noting contrary decisions from the Fourth, Fifth, Sixth, and Eleventh Circuits).

## II.      Plain-Error Review

In their briefs, neither party expressly addressed the appropriate standard of review, assuming the Court were to assess Defendant's motion on the merits. In their supplemental letters in the wake of *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019), however, the parties appear to embrace plain-error review as the appropriate standard under which the Court should assess Defendant's motion, if it were to decide the merits. Gov't Ltr. at 2, Dkt. 100; Def. Ltr. at 4–5, Dkt. 102. The Court agrees. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Walker*, 974 F.3d 193, 202 (2d Cir. 2020) (applying plain-error review to a challenge to the sufficiency of an indictment under *Rehaif*); *Balde*, 943 F.3d at 92 ("[W]hile *Rehaif*'s impact is only beginning to be addressed, courts have thus far unanimously applied a plain error standard in addressing convictions obtained before that decision, at times when the circuits uniformly held that the knowledge element identified in *Rehaif* did not need to be alleged in an indictment, found by a jury, or proven beyond a reasonable doubt."); *United States v. Nkansah*, 699 F.3d 743, 752 (2d Cir. 2012) (stating that when an argument concerning a constitutional infirmity in the indictment is raised only after trial, the appropriate standard of review is plain error), *abrogated on other grounds by United States v. Bouchard*, 828 F.3d 116 (2d Cir. 2016); *United States v. Gore*, 154 F.3d 34, 41 (2d Cir. 1998) ("[I]ssues not intentionally relinquished or abandoned but nevertheless not raised — that is, forfeited issues — may be reviewed for plain error."); *see also United States v. Haynes*, 798 F. App'x 560, 563(11th Cir. 2020) (citing *Henderson v. United States*, 568 U.S. 266, 273–74 (2013); *Johnson v. United States*, 520 U.S. 461, 468 (1997)) (rejecting argument that plain-error review did not apply to defendant's case because his claim was not reasonably available pre-*Rehaif*); *Maez*, 960 F. 3d at

957 ("Although the intervening decision in *Rehaif* establishes good cause to avoid waiver, the issue was still not preserved in these cases, so we again review the indictments for plain error.").

To prove plain error, Defendant must demonstrate "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Balde*, 943 F.3d at 96 (quoting *United States v. Bastian*, 770 F.3d 212, 219–20 (2d Cir. 2014)).

To satisfy the first two elements requiring a showing of an error that was clear or obvious, Defendant must demonstrate that his indictment was defective. Because Defendant cannot satisfy the fourth (and probably the third) element of plain-error review, the Court need not decide whether Defendant's indictment was defective. As discussed below, however, the Court harbors serious doubts that Defendant could establish that his indictment was defective, much less that it was clearly or obviously defective.

Defendant contends that his indictment was defective because "it does not allege that he knew of his status as a person who had been convicted of a crime punishable by imprisonment for a term exceeding one year," a required element of a § 922(g) offense after *Rehaif*. Def.'s Mem. of Law at 9. Under the Federal Rules, an indictment need only "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). To satisfy the strictures of Rule 7(c)(1), "an indictment need 'do little more than to track the language of the statute charged and state the time and place . . . of the

alleged crime.'" *Id.* (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)).  Further, an indictment must be scrutinized according to the context in which a defendant challenges the sufficiency of that indictment; "[w]here a defendant raises an objection after a verdict has been rendered, . . . [the] indictment should be interpreted liberally, in favor of sufficiency." *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001) (citing *United States v. Wydermyer*, 51 F.3d 319, 324–25 (2d Cir. 1995)).

In *United States v. Balde*, the Second Circuit analyzed whether the failure of an indictment to charge a defendant's knowledge of status as a prohibited person deprived the district court of jurisdiction.  943 F.3d at 88–93.  The Second Circuit explicitly distinguished between an indictment defect that deprives the court of jurisdiction and an indictment defect that supports an objection for a failure to state an offense.  *See id.* at 90–92.  The court limited its holding to the conclusion that failing to explicitly charge defendant's knowledge of his prohibited status does not deprive the court of jurisdiction.  *See id.*  In so deciding, the Second Circuit left open the question of whether such an indictment states an offense.

While *Balde* does not foreclose Defendant's sufficiency argument, the Court is nonetheless unaware of any case finding that an indictment like Simmons' fails to state an offense under Rule 12(b)(3)(B)(v), even after *Rehaif*.  Several courts have determined that when the indictment closely tracks the statutory language and includes a general allegation of knowledge, principles of statutory interpretation similar to those used by the *Rehaif* Court dictate that the indictment is sufficient.  In *Maez*, for example, the Seventh Circuit consolidated three appeals that raised *Rehaif* issues.  *See Maez*, 960 F.3d at 953.  Defendant Maez's indictment was similar to Simmons', in that the word "knowingly" preceded a recitation of Maez's prior conviction.  *See id.* at 965.  The court found that Maez's indictment charged knowledge of status because "the mens rea term 'knowingly' came at the start of a series" such that "[a]

grammatically correct and natural reading of the text applies 'knowingly' to each of the subsequent clauses." *Id.* (citing the *Rehaif* Court's own analysis as substantial support for this interpretation of the indictment). Similarly, in *United States v. Schafer*, the district court found that an indictment that included the language, "and the defendant did so knowingly," at the end of a sentence detailing the defendant's conduct and prior conviction was not defective, as it stated the crime's essential elements even in light of *Rehaif*. No. 19-CR-47, 2019 WL 4393682, at *2–3 (N.D. Ind. Sept. 12, 2019). Relying on the method of interpretation employed in *Rehaif*, the *Schafer* court "look[ed] to the indictment as a whole and refrain[ed] from reading it in a 'hypertechnical manner,'" finding that the placement of the word "knowingly" in a separate clause rendered it applicable to all operative elements of the charge that preceded it. *Id.* at *2.

In all cases (of which this Court is aware) in which a court has found an indictment defective in light of *Rehaif*, the indictment differed materially from Defendant's.[8] The Seventh Circuit in *Maez* assumed there to be error in Defendant Battiste's indictment; in that indictment, the word "knowingly" followed a recitation of Battiste's prior felony conviction.[9] *Maez*, 960 F.3d at 966. The Ninth Circuit also found an indictment to be defective where the word knowingly came after the recitation of the defendant's prior conviction. *See United States v. Qazi*, 975 F.3d 989, 994 (9th Cir. 2020); Government's Answering Brief at 26, *Qazi*, 975 F.3d 989 (No. 18-10483). Similarly, in *United States v. Robinson*, the court found that an indictment in which the word "knowingly" followed the description of defendant's prior conviction did not

---

[8] While the Second Circuit in *Balde* did not decide whether the indictment was deficient, it also bears noting that the indictment in *Balde* differed from Defendant's indictment in the same way as the other cases cited in text. In *Balde*, the language detailing Balde's prohibited status preceded the word "knowingly." Here, the word "knowingly" precedes the recitation of Defendant's prior felony convictions.

[9] Nonetheless, the Seventh Circuit did not reverse Battiste's conviction, finding that the error in the indictment did not undermine the fairness or integrity of the trial, thereby failing the fourth prong of the plain-error analysis. *See Maez*, 960 F.3d at 966.

"strictly allege the now-required element under *Rehaif* that [defendant] knew he was a felon." No. 17-CR-20046, 2019 WL 7985173, at *3–4 (W.D. Tenn. Nov. 13, 2019). These courts' decisions notwithstanding, at least one court has found an indictment in which the recitation of a defendant's prior conviction *preceded* the word "knowingly" was not defective under *Rehaif*. *See United States v. Hester*, No. 18-CR-85, 2020 WL 569853, at *2 (E.D. Tex. Feb. 5, 2020). That court employed the maxim that "indictments should be read as a whole and assessed on practical, not technical, considerations." *Id.* (holding further that the technical analysis was not even necessary because the placement of an adverb in the indictment should not be grounds for dismissal).

Affording the indictment a liberal reading in favor of sufficiency, Defendant's indictment can likely be read to have sufficiently charged him with knowledge of his status as a convicted felon. As other courts to consider the issue have found, when "knowingly" precedes a recitation of the facts making the defendant a prohibited person, the statutory interpretation used by the Supreme Court in *Rehaif* supports interpreting the indictment so that the word "knowingly" applies to the status element of the offense. While *Balde* considered the issue in the context of a jurisdictional challenge, the *Balde* court's analysis also supports such a reading of Defendant's indictment, using the *Rehaif* Court's method of interpretation. *See Balde*, 943 F.3d at 90 ("If, as the Supreme Court held, the language of the statute includes a requirement that the defendant must have knowledge of his illegal status, it is difficult to understand how an indictment that tracks the exact language of the statute . . . fails on its face to charge that the defendant committed a federal crime.").

Prior Second Circuit case law also supports the proposition that the failure to include explicit language charging that the *mens rea* element — "knowingly" — applies to Defendant's prohibited status does not render the indictment defective. The Second Circuit has held that the

complete absence of a *mens rea* element in an indictment does not result in a defective indictment if the surrounding context allows an inference of the *mens rea* element. *See United States v. Tobias*, 33 F. App'x 547, 549 (2d Cir. 2002) (holding that because the indictment tracked statutory language and otherwise contained language implying knowing and willful conduct, the indictment was not defective); *Wydermyer*, 51 F.3d at 324; *United States v. Santeramo*, 45 F.3d 622, 624 (2d Cir. 1995) (per curiam) (finding sufficient an indictment that failed to allege expressly the defendant knowingly violated § 924(c) because context in the indictment gave defendant ample information to defend against the charge and to plead a double jeopardy bar to future prosecutions, satisfying requirements of the Fifth and Sixth Amendments); *United States v. Sutton*, 961 F.2d 476, 479 (2d Cir. 1992) (same)*; see also United States v. Cain*, No. 05-CR-360A, 2008 WL 11510001, at *3 (W.D.N.Y. Nov. 5, 2008) (upholding an indictment that failed to allege the defendant acted "knowingly" because "[k]nowledge is clearly inferred from the other allegations contained in the specific counts"). Here, the word "knowingly" can reasonably be read to modify Defendant's status, and, when read in conjunction with the allegations regarding Defendant's three prior convictions, to the extent there is any error, it would be difficult to deem that error "clear or obvious."

Finally, the Second Circuit's analysis in *United States v. Johnson* supports the conclusion that Defendant's indictment is not defective. 816 F. App'x 604 (2d Cir. 2020) (summary order). In *Johnson*, the defendant argued on direct appeal that his indictment was defective because it failed to allege the *Rehaif* knowledge-of-status element, giving rise to a due process violation because the indictment failed to give the defendant notice of that element of the offense. *Id.* at 607. The court refrained from engaging in any interpretation of the indictment's wording but reiterated the well-settled principle that "an indictment which charges a statutory crime by following substantially the language of the statute is amply sufficient, provided that its generality

neither prejudices defendant in the preparation of his defense nor endangers his constitutional guarantee against double jeopardy." *Id.* (quoting *United States v. Palmiotti*, 254 F.2d 491, 495 (2d Cir. 1958)). The court deemed it a "dubious assumption" that the defendant could show any defect in the indictment but ultimately disposed of defendant's challenge by deciding that he could not show any prejudice in light of the overwhelming evidence that he knew he was a convicted felon. *Id.*

Here, too, whether the indictment is defective is ultimately irrelevant in light of the fact that Defendant cannot satisfy the fourth (and probably the third) prong of the plain-error analysis. Since its decision in *Balde*, the Second Circuit has repeatedly held that overwhelming evidence of a defendant's prohibited status under § 922(g) forecloses that defendant's ability to demonstrate that allegedly "defective" wording in the relevant instrument, whether indictment, jury instruction, or guilty plea, constitutes plain error. Some cases have determined that the existence of overwhelming evidence that the defendant knew he was a felon prevents a defendant from satisfying the fourth prong of plain-error review. *See, e.g.*, *Walker*, 974 F.3d at 202–03; *United States v. Miller*, 954 F.3d 551, 559–60 (2d Cir. 2020), *United States v. Legrier*, 813 F. App'x 732, 733 (2d Cir. 2020) (summary order). In several cases arising in the context of a challenge to a defendant's guilty plea, courts have determined that the existence of such overwhelming proof that the defendant knew he was a felon prevented the defendant from showing that he would not have pled guilty had he been better apprised of the knowledge-of-status requirement, thereby preventing the defendant from satisfying the third prong of plain-error review. *See, e.g.*, *United States v. Curry*, 823 F. App'x 16, 18–19 (2d Cir. 2020); *United States v. Keith*, 797 F. App'x 649, 652 (2d Cir. 2020). Ultimately, these cases demonstrate that if the Government would have had little difficulty proving a defendant's knowledge of status at

trial, less-than-ideal wording in an indictment does not constitute plain error warranting reversal of a conviction.

Other circuits and district courts have reached the same conclusion when analyzing an allegedly defective indictment under a plain-error analysis. *See Maez*, 960 F.3d at 966 ("Considering the evidence heard by the trial jury and Battiste's extensive prior criminal history laid out in detail in his PSR, 'we can be confident in retrospect that the grand jury (which acts under a lower burden of persuasion) would have reached the same conclusion.'"); *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019) ("Because the record establishes that Reed knew he was a felon, he cannot prove that the errors affected his substantial rights or the fairness, integrity, or public reputation of his trial."); *United States v. Hessiani*, 786 F. App'x 658, 661 (9th Cir. 2019) (finding indictment error did not affect defendant's substantial rights or seriously affect fairness, integrity, or public reputation of judicial proceedings because record clearly established defendant's knowledge of prior felony convictions).

Relying on *United States v. Sepulveda*, 420 F. Supp. 3d 153 (S.D.N.Y. 2019), *abrogated by Miller*, 954 F.3d 551, Defendant contends that the Court may not look to the trial record or any other evidence that was not before the grand jury in assessing whether Defendant's allegedly defective indictment warrants dismissal. Intervening Second Circuit case law since the submission of Defendant's briefs demonstrates that this is incorrect. *See, e.g.*, *Walker*, 974 F.3d at 202–03 (rejecting defective indictment argument because "evidence available to the government for use at trial indicates persuasively that Walker was well aware of his status as a felon"); *Johnson*, 816 F. App'x at 607 (reviewing defendant's PSR to conclude there was no prejudice from allegedly defective indictment); *Miller*, 954 F.3d at 559–60 (permitting review of evidence outside the trial record for purposes of fourth prong of plain-error review because it would be unfair to prevent government from introducing evidence that it either had no incentive

to or was precluded from introducing pre-*Rehaif*). Even well before *Rehaif*, the Second Circuit had concluded that "[w]hen there is 'overwhelming' evidence in support of the missing indictment element, the grand jury surely would have found the missing element, and the right to be tried only on charges returned by the grand jury is not violated." *Nkansah*, 699 F.3d at 752.

At his bench trial, Defendant stipulated to three prior felony convictions and to having been sentenced to more than one year's imprisonment on each conviction. *See* Stip., Dkt. 95-1. In addition, Defendant's PSR lists each of the three felony convictions included in the stipulation, clearly demonstrating that the sentence Defendant received for each exceeded one year's imprisonment and even showing that Defendant actually served terms of imprisonment for those convictions in excess of one year. *See* PSR ¶¶ 50–62. On these facts, Defendant cannot show that his conviction on the allegedly deficient indictment seriously affected the fairness, integrity, or public reputation of judicial proceedings. In short, Defendant cannot demonstrate plain error.

### III. Absence of Prejudice

Defendant may contend that plain-error review would be inappropriate if the Court were to determine that his motion was timely because it was not "reasonably available" pretrial. Defendant hints at such an argument in his briefs, contending that the constitutional rights implicated by his claim require dismissal should the Court find the indictment was defective. Even were the Court to forego plain-error review, however, Defendant would still be required to demonstrate prejudice from the allegedly defective indictment. *See Johnson*, 816 F. App'x at 607 (requiring defendant to demonstrate prejudice in order to sustain his due process claim based on allegedly defective indictment); *United States v. Lee*, 833 F.3d 56, 69–70 (2d Cir. 2016) (holding that "an indictment's failure to allege an element that increases the authorized punishment from the misdemeanor level to the felony level may be a harmless error if the

concerns as to fair notice and double-jeopardy protection are otherwise satisfied"); *United States v. Jackson*, 513 F App'x 51, 55 (2d Cir. 2013) (finding that any error in indictment caused by failure to allege *mens rea* element was harmless because proof at trial was sufficient to establish defendant acted with requisite *mens rea*); *Wydermyer*, 51 F.3d at 324–26; *see also United States v. Walters*, 910 F.3d 11, 28 (2d Cir. 2018) ("In any event, [defendant's] constitutional claim fails because he has not demonstrated prejudice in this case." (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988))).

As detailed above, because there was ample evidence to demonstrate Defendant knew he was a felon, he cannot show any prejudice stemming from the indictment's alleged failure to charge that Defendant knew of his prohibited status under the statute.  *See Johnson*, 816 F. App'x at 607 (deeming it "unsurprising" that defendant could not demonstrate "any concrete prejudice stemming from a lack of notice as to the need for his knowledge-of-status to be shown at trial" where defendant's PSR listed "four prior felony convictions for which he received lengthy sentences"); *Maez*, 960 F.3d at 968 ("[Defendant's] PSR shows an extensive criminal history that leaves no doubt as to his knowledge of his status as a felon or as to the result of impaneling a second grand jury.").  Therefore, even were a less exacting standard than plain-error review required, Defendant's motion would still be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED, and his conviction upheld.

Counsel for the parties and Defendant must appear for resentencing on **January 12, 2021, at 2:00 p.m.**  The parties must submit sentencing memoranda and any other written submissions not later than **December 29, 2020**.

Due to the unusual circumstances in this case, Defendant's lengthy period of release pending the resolution of developing case law, and Defendant's success in avoiding any arrests

or convictions while released, Defendant is invited to brief any theory under which he should be entitled to receive sentencing credit or other relief for the four-year period during which he has been released from custody but subject to restraints on his liberty.  *See* Order Setting Conditions of Release, Dkt. 64.  To the extent Defendant wishes to do so, Defendant may file a letter addressing this issue no later than **November 30, 2020**.  If the Government wishes to respond, its response must be filed no later than **December 14, 2020**.  Further, to the extent the parties believe there is an alternative way of disposing of this matter that achieves justice under these unusual circumstances, the Court urges the parties to resume discussions.

The Clerk of Court is respectfully directed to close the open motion on Docket Number 08 Cr. 1280 (VEC), Dkt. 93.  The Clerk of Court is also respectfully directed to close the open motion on Docket Number 08 Cr. 1280 (VEC), Dkt. 62, as Defendant's original sentence was vacated by the order on Dkt. 63.

**SO ORDERED.**

**Date:  October 29, 2020**          **VALERIE CAPRONI**
**New York, NY**                **United States District Judge**